UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

FEBRA ANN SCHAUB,

        Plaintiff,                                Case No. 1:16-CV-80

v.                                               HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Febra Schaub seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).

It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was fifty-two years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.181, 208.) She completed high school, obtained a certificate from community college, and was previously employed as a billing clerk. (PageID.209. 234.) Plaintiff applied for benefits on March 8, 2013, alleging that she had been disabled since December 18, 2002 due to depression, anxiety, panic attacks, trouble sleeping, and fatigue.[1] (PageID.239, 300–301.) Plaintiff's application was denied on August 27, 2013, after which time she requested a hearing before an ALJ. (PageID.249–252, 255–256.) On September 3, 2014, Plaintiff appeared with her counsel before ALJ Donna Grit for an administrative hearing, with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.203–236.) On October 14, 2014, the ALJ issued her written decision that found Plaintiff was not disabled. (PageID.181–202.) On November 24,

---

[1] On September 2, 2014, Plaintiff amended her onset date to July 3, 2012. (PageID.341.)

2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.19–25.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

---

[2]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

ALJ Grit determined that Plaintiff's claim failed at the fourth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 3, 2012, her amended alleged onset date. (PageID.186.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) hammertoes of fifth digit of bilateral feet; (2) history of left medial meniscectomy with left knee degenerative changes; (3) fibromyalgia; and (4) degenerative changes of the right shoulder / adhesive capsulitis, s/p arthroscopy. (PageID.186.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.189–190.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; and in an 8-hour workday with normal breaks, she could stand and walk for a total of about 6 hours and could sit for a total of about 6 hours. She could not climb ladders, ropes, or scaffolds; could occasionally stoop, crouch, crawl, kneel and balance; should have only occasional exposure to extremes of cold and dampness; and should not work at unprotected heights.

(PageID.190.) Continuing with the fourth step, the ALJ determined that Plaintiff was capable of performing her past relevant work as a billing clerk. The ALJ determined that this work did not require the performance of work-related activities that would be precluded by Plaintiff's RFC. (PageID.195–196.) Having made her determination, the ALJ completed her analysis and was not required to proceed further.

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from her amended alleged onset date through the date of decision. (PageID.196.)

## DISCUSSION

**1.    The ALJ Properly Considered The Medical Opinions in the Record.**

Plaintiff submitted several opinions from medical professionals in support of her

4

application for benefits. In her first claim of error, Plaintiff claims the ALJ erred in failing to assign controlling weight to these opinions, and erred in giving great weight to the opinion of the agency consultant. For reasons discussed below, the Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

### A. *The Opinions of Ms. Sue Boyd and Dr. Ruqiya Tareen*.

On February 27, 2014, Ms. Sue Boyd, a certified physician's assistant, completed a mental RFC questionnaire encompassing Plaintiff's limitations in the areas of making occupational adjustments, making performance adjustments, making personal/social adjustments, and Plaintiff's ability to function. (PageID.623–25.) Each area contained several check-box questions that asked for the severity of Plaintiff's condition in several categories. Ms. Boyd indicated that Plaintiff had four moderate limitations, seven mild limitations, and was not limited in seven categories.[3] (PageID.623–25.) Ms. Boyd further stated that Plaintiff had experienced "one or two" episodes of decompensation. (PageID.625.) The following day, Dr. Denise Gribbin also signed the opinion. (PageID.626.)

The record also contains the August 26, 2013, opinion of Dr. Ruqiya Tareen, the agency consultant, who found that Plaintiff's anxiety disorder was not a severe impairment. (PageID.243.) The doctor noted that while there was reported psychiatric treatment, Plaintiff's activities of daily living were not limited because of this condition. The doctor noted that Plaintiff could take care of her personal needs, a mental examination had found normal results, and Plaintiff seemed alert, oriented, and happy. Plaintiff had also stated her symptoms were controlled on medications. (PageID.244.) The ALJ gave great weight to Dr. Tareen's opinion, but assigned only

---

[3] The RFC form indicated that moderate limitations are those that "result in satisfactory but limited function." It also defined mild limitations as those that "do not significantly limit a person's ability to perform most jobs." (PageID.623.)

little weight to Ms. Boyd and Dr. Gribbin's opinion. (PageID.195.) Plaintiff argues that the ALJ should have given controlling weight to Ms. Boyd's opinion. In the alternative, she argues that the ALJ at least should have given greater weight to Ms. Boyd's opinion than to Dr. Tareen's opinion because Dr. Tareen did not have the opportunity to review all the records. (PageID.1163.)

As an initial matter, it is questionable whether Ms. Boyd's opinion is subject to the treating physician rule at all. Because she is a physician's assistant, Ms. Boyd is not an acceptable source, and accordingly the ALJ would not be required to provide "good reasons" for the weight given to her opinion. *See* 20 C.F.R. § 404.1513(a), (d)(1); *see, e.g.*, *Hughes v. Comm'r of Soc. Sec.*, No. 1:11–cv–66, 2015 WL 4076931, at *8 (W.D. Mich. July 6, 2015); *Gordon v. Colvin*, No. 2:14–cv–213, 2015 WL 350617, at *6 (S.D. Ohio Jan. 26, 2015) (collecting cases).

The only way the treating physician rule might apply is through the addition of Dr. Gribbin's signature the following day. But while Dr. Gribbin qualifies as an acceptable medical source, it is not clear that Dr. Gribbin qualifies as a treating source. Social security regulations define a "treating source" as a physician or other acceptable medical source who has had an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502; *see Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 442 (6th Cir. 2010). Here the record is murky at best as to whether Dr. Gribbin ever saw Plaintiff prior to the date of the opinion. The record contains six treatment notes prior to the date of the opinion from Dr. Gribbin's practice. (PageID.1075, 1078, 1081, 1084, 1087, 1090.) Each note is completed in the singular first person, but is signed both by Ms. Boyd and Dr. Gribbin. (*See, e.g.*, PageID.1086.) It is not clear from the notes, then, who actually examined Plaintiff. For her part, the ALJ stated only that it was Ms. Boyd who examined Plaintiff. (PageID.187.)

But even if the Court were to characterize Ms. Boyd's opinion as one from a treating

7

source, there are other flaws with the opinion.  As noted above, the opinion consists entirely of check-box answers.  On five occasions, the RFC worksheet asked for the medical professional to provide supportive findings, clinical notes, or additional remarks in support of the opinion.  (PageID.624–625.)  Each time the area was left blank.  (PageID.1075.)  ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation.  *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993); *see also Ashley v. Comm'r of Soc. Sec.*, No. 1:12–cv–1287, 2014 WL 1052357, at * 8 n.6 (W.D. Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").  Here, the "rudimentary indications" on the opinion lack any accompanying support and accordingly meet the "patently deficient standard" of the Sixth Circuit.  *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citing *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010).  In light of these concerns, the opinion is extremely vague.  Indeed, other than noting that Plaintiff had experienced one or two episodes of decompensation, something that Plaintiff admits was a mistake (PageID.1163), the most severe limitations provided by the opinion still indicate that Plaintiff's ability to function would be satisfactory.  (PageID.623.)  Plaintiff has not shown how this is inconsistent with the conclusions of either the ALJ or Dr. Tareen.

    To the extent that Ms. Boyd's opinions are considered to be inconsistent with those found by the ALJ, however, the Court finds the ALJ's discussion easily survives scrutiny.  The ALJ noted that the limitations provided by Ms. Boyd with regard to Plaintiff's concentration were inconsistent with Plaintiff's husband's remark that she was able to follow written instructions.

(PageID.377.)  The ALJ also noted it was inconsistent with Plaintiff's own statement that her symptoms were well controlled with her medication.  (PageID.408.)  The ALJ went on to find the opinion was inconsistent with Ms. Boyd's June 19, 2014 treatment note where, among other things, Plaintiff reported she was doing well, that her current medications were controlling her symptoms, and that she had no concerns.  (PageID.1069.)  At that visit Plaintiff was found to have a euthymic mood and affect, intact cognition and memory, and intact insight and judgment.  (PageID.1070.)  Accordingly, the ALJ provided good reasons, supported by substantial evidence, for giving less than controlling weight to the opinion.

As regards Dr. Tareen's opinion, the ALJ is responsible for weighing conflicting evidence.  *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001); *see also Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  The ALJ was free to consider Dr. Tareen's opinion and determine what weight, if any, it should be given.  "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(I), 416.927(e)(2)(I); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.1994); *see also Brooks v. Comm'r of Soc, Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").  Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date

before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that Dr. Tareen gave his opinion on the basis of the medical record as it existed on August 26, 2013. (PageID.190.)   Here, the ALJ noted she had considered the "entire record" including those records dated after Dr. Tareen rendered his opinion. (PageID.190.)   The ALJ thoroughly considered and discussed those records and opinions dated after Dr. Tareen gave his opinion, and gave great weight to Dr. Tareen's opinion because it was explained and supported by the medical evidence of record.  The Court finds no error in the ALJ's assignment of great weight to this opinion.

For all the above reasons, Plaintiff's argument regarding Dr. Tareen, Ms. Boyd, and Dr. Gribbin, is rejected.

      **B.**      ***Dr. Auburn and Dr. Zelasko***.

The record contains two additional RFC questionnaires from Dr. Ann Auburn and Dr. Pamela Zelasko.  (PageID.601–602, 604–605.)  Dr. Auburn began her opinion by noting that Plaintiff was diagnosed with anxiety, depression, fibromyalgia, and chronic fatigue.  She also provided limitations that were much more severe than those found by the ALJ.  For example, she concluded that Plaintiff was limited to standing for less than two hours in a workday, and sitting for less than six hours.  (PageID.601.)  Plaintiff could only occasionally reach, handle, and finger, and perhaps lift up to ten pounds.  Plaintiff would need a sit / stand option, and would have limitations on focusing and concentrating.  (PageID.601.)  Dr. Zelasko's opinion diagnosed Plaintiff with fibromyalgia and depression, and provided limitations similar to those of Dr. Auburn.  (PageID.604.)

These opinions suffer from a similar flaw as Ms. Boyd's in that they consist entirely of check box answers, and are unaccompanied by an explanation, even though space was provided for that purpose.  (PageID.602, 605.)  Accordingly, they are "weak evidence at best." *Mason*, 994 F.2d at 1065.  As the ALJ noted, Dr. Zelasko's treatment note from the same day she authored her

10

opinion does not support the severity of limitations. (PageID.1034.) The same is true with Dr. Auburn's treatment note. (PageID.944.) The ALJ nonetheless thoroughly examined both opinions and found them to be inconsistent with the record. (PageID.194–195.) Plaintiff relies heavily on the Sixth Circuit's decision in *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007), arguing that opinions from physicians in fibromyalgia cases that are "based solely upon so-called objective evidence are not particularly relevant," and that, in this context, "opinions of treating physicians deserve even more credence." (PageID.1164.) While Plaintiff correctly states that in fibromyalgia cases an ALJ may not minimize the severity of fibromyalgia based solely on objective testing, *Rogers* does not require any further deference to medical opinions beyond that already found in the regulations. *Id.* at 243–46.

Here, the ALJ found the doctors' opinions to be inconsistent with Plaintiff's admissions in the record. As noted above, Plaintiff stated her symptoms were well controlled with medications. (PageID.244.) The ALJ also found the severity of limitations to be inconsistent with Plaintiff's activities. Plaintiff testified that she spent five to ten hours a week selling items that she obtained at garage sales or Goodwill on the internet. (PageID.210, 214.) She testified that she could walk a mile or two. (PageID.228.) She spent a couple hours a week going door to door for church outreach. (PageID.229.) She can prepare simple meals, do cleaning, laundry, and vacuuming. (PageID.396.) The ALJ reasonably found these activities to be inconsistent with the doctors' opinions.

In her reply brief, Plaintiff argues that having discounted the treating physicians' opinions, the ALJ "played doctor" in crafting her RFC. (PageID.1196.) This argument fails because the Sixth Circuit has rejected it. *See, e.g.*, *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (noting that "the Commissioner has final responsibility for determining an individual's

11

RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled'") (quoting SSR 96–5p); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). The Court concludes the ALJ acted squarely within her authority in determining Plaintiff's RFC. It is the ALJ who has the ultimate responsibility for assessing a Plaintiff's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [her] residual functional capacity.'"). As the ALJ indicated, Dr. Lebolt's opinion played a part in determining Plaintiff's RFC. (PageID.194.) The Court finds no error here.

For all the above reasons, Plaintiff's first claim of error is denied.

**2.      The ALJ Properly Considered Plaintiff's Non-Severe Impairments.**

Plaintiff next argues that the ALJ erred by failing to find multiple impairments to constitute severe impairments at step two. Alternatively, she argues that the ALJ failed to properly consider the non-severe impairments when determining Plaintiff's RFC. (PageID.1165.)

A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a

severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Id.* An ALJ can consider such non-severe conditions in determining the claimant's RFC. *Id.* Here, the ALJ continued to evaluate Plaintiff's claim after finding that she had both severe and non-severe impairments, and accordingly her decision not to classify as severe some other impairments does not constitute reversible error.

The Social Security Act requires the agency "to consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability." *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988); 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). The Sixth Circuit has found an ALJ's analysis of a claimant's combined impairments sufficient where the ALJ referred to a "combination of impairments" in deciding the claimant did not meet the listings, the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work, the ALJ's decision was made after careful consideration of the "entire record," and, all of the claimant's impairments were discussed individually in the decision. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). "To require a more elaborate articulation of the ALJ's thought process would not be reasonable." *Id.* The Sixth Circuit has also found that the ALJ properly considered the combined effects of the claimant's impairments where the ALJ's decision referred to the claimant's "severe impairments" and "combination of impairments." *See Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990).

Here, the ALJ referred to her obligation to consider all of Plaintiff impairments, including those that were not severe. (PageID.185.) She noted she had to consider whether the Plaintiff's impairments or combination of impairments met a listing at step three. (PageID.185.) The ALJ also stated that she made her determination after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (PageID.190.) The ALJ's decision sufficiently indicates that she considered the combined effects of Plaintiff's impairments, both severe and non-severe. *See Loy*, 901 F.2d at 1310; *Gooch*, 833 F.2d at 592. Accordingly, this claim of error will be denied.

### 3. Plaintiff Has Not Satisfied Her Burden For a Sentence Six Remand.

Plaintiff submitted to the Appeals Council evidence that was not presented to the ALJ. The Appeals Council received the evidence, but nevertheless declined to overturn the ALJ's determination. (PageID.19–25.) This Court, however, is precluded from considering the evidence in question. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it to the ALJ, the Court can remand the case for further proceedings, during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden

of making these showings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff claims the Court should remand for consideration of this evidence because the Appeals Council encouraged Plaintiff to submit new evidence. This falls far short of satisfying her burden. Moreover, in assessing the evidence in question and declining to reverse the ALJ's decision, the Appeals Council stated that:

> This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 14, 2014 [the date of the ALJ's decision].

(PageID.20.)

The Court agrees with the assessment by the Appeals Council. If Plaintiff believes that this evidence demonstrates she is now disabled, her recourse is in the filing of a new application for benefits, not a sentence six remand. Accordingly, Plaintiff is not entitled to a sentence six remand for the consideration of this evidence.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated: October 20, 2016         /s/ Gordon J. Quist
                          GORDON J. QUIST
                          UNITED STATES DISTRICT JUDGE